## Case No. 7,224.

JARVIES v. The STATE OF MAINE.

[36 Hunt, Mer. Mag. 326.]

District Court, N. D. New York. 1857.

HALL, District Judge. My examination of this case has confirmed the impression, received at the hearing, that both vessels were in fault. The collision occurred in the daytime, and those in charge of the colliding vessels ought to have known that if they continued to approach each other with unabated speed they would necessarily pass at a point where both vessels would be subject to the powerful action of a strong ebb-tide, which, from the course and changes of the current at and near that point, would change suddenly and very considerably the course and position of the schooner, and affect to a greater or less extent the direction and progress of the steamer. Neither the one nor the other could be wholly under control, but both would be necessarily more or less driven out of the track which it was deemed most desirable to pursue. To pass safely under such circumstances in the most difficult and dangerous portion of the narrow channel of Hell Gate, required very extraordinary care, and a competent degree of skill, on the part of those in charge of their respective vessels.

Although the evidence is in many respects conflicting and unsatisfactory, I am of the opinion that the requisite diligence, care, and skill were not exerted on board the schooner, and that the steamer—which should either have slackened her speed and waited in comparatively still water until the schooner had passed the point of danger, or have proceeded with the utmost care and caution, and if necessary at less speed until the danger was over—was likewise in fault. Having, with a full knowledge of the danger, elected to proceed, the steamer must be held in fault, unless it appears that those to whose management she was intrusted managed her with the requisite skill, and with the utmost care, and that the fault of those in charge of the schooner was solely the cause of the collision. I cannot say the schooner alone was in fault. The course and management of the steamer were not such as to give the pilot of the schooner clear and unmistakeable notice of the side the master of the steamer intended to take in passing, and the helm of the schooner may have been, and probably was, ported a moment before the collision—either intentionally or instinctively, and involuntarily—in consequence of the uncertainty in regard to the steamer's intention, and the feeling of danger which this uncertainty was so well calculated to excite. It is also clear that there was no sufficient look-out kept upon the schooner, and her course and management were not such as to indicate distinctly which side of the steam-er, or what part of the channel, the pilot of the schooner intended to take; and it is almost certain (although it was sworn that a careful look-out was kept on the steamer) that both vessels proceeded in fancied security, or at least without any just conception of the danger impending,—the schooner without shortening sail, and the steamer without checking her speed, until it was too late to prevent the collision which ensued.

I repeat that the testimony, upon which I have formed these conclusions, is in many respects conflicting and unsatisfactory, but the case is certainly one of mutual fault, or else one of inscrutable fault,—and in either case the rule of the admiralty is to divide the damages. There must be a reference to a commissioner to ascertain the damages occasioned by the collision, which will be apportioned between the parties, and neither party is to be entitled to costs as against the other.